IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

CYNTHIA DANIELSON,                       )
                                         )
            Plaintiff,                    )     TC-MD 180154G
                                         )
      v.                                  )
                                         )
DEPARTMENT OF REVENUE,                    )
State of Oregon,                          )
                                         )
            Defendant.                    )     **FINAL DECISION**[1]

Plaintiff (taxpayer) appealed the disallowance by Defendant (the department) of her

claimed Working Family Household and Dependent Care Credit (working family credit) for

2017.  Taxpayer appeared and testified on her own behalf at trial, and Christian Kelly appeared

and testified on behalf of the department.  The department's exhibits A to G were admitted

without objection; taxpayer did not submit any exhibits.

## I.  STATEMENT OF FACTS

During the year at issue, taxpayer's two young children were cared for by her aunt while

taxpayer worked.  The evidence of the child-care arrangement consisted of documents taxpayer

submitted to the department before she filed her Complaint, bank statements taxpayer submitted

during the pendency of this appeal, and taxpayer's testimony at trial.

The documents previously received by the department included a letter from taxpayer, a

letter bearing the signature of taxpayer's aunt, and a Form OR-PS bearing the signature of

taxpayer's aunt.  Taxpayer's letter stated:

/ / /

---

[1] This Final Decision incorporates without change the court's Decision, entered September 24, 2018.  The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered.  *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

"The only type of income used to pay my daycare provider was the Employment Related Day Care Program. However, this benefit ended at the end of April 2017. I pa[id] my care provider $1000 dollars cash at the beginning of every month in addition to what the State of Oregon [illegible]. This time was from June 2nd 2017 to Dec 29th 2017."

(Ex B at 1.) The Form OR-PS recorded a total payment of $6,000 for each of the two children in 2017. (Ex C at 1.) The spaces on the form for allocating between payments made by taxpayer and payments made by third parties were left blank. (*Id*.) A box checked on the form indicated that taxpayer was not provided with a receipt every time she paid. (*Id*. at 2.) The letter from taxpayer's aunt stated: "Cynthia has made her payments at the beginning of every month in cash. She paid $500 for [each child]." (Ex D at 1.) The letter included the following list:

"Payment dates for 2017:
"Jan. 6th $1,000 Cash Paid
"Feb. 3rd $1,000 Cash Paid
"Mar. 3rd $1,000 Cash Paid
"Apr. 14th $1,000 Cash Paid
"May 12th $1,000 Cash Paid
"Jun. 9th $1,000 Cash Paid
"Jul. 7th $1,000 Cash Paid
"Aug. 4th $1,000 Cash Paid
"Sep. 1st $1,000 Cash Paid
"Oct. 13th $1,000 Cash Paid
"Nov. 9th $1,000 Cash Paid
"Dec. 8th $1,000 Cash Paid"

(Ex D at 1.)

Bank statements for taxpayer's checking account were received into evidence. (Ex E.) Approximately 95 percent of the transactions shown on the bank statements were redacted. The only transactions left unredacted were 61 branch and ATM withdrawals from various locations on various dates from December 2016 to December 2017. Two of the withdrawals were significantly larger than the others: $1,208 withdrawn on February 28, 2017, and $1,000 withdrawn on November 7, 2017. Seventeen withdrawals were made in amounts from $300 to

$660. Twenty-one withdrawals were made in amounts from $100 to $200, and another twenty-one withdrawals were made in amounts from $20 to $82.50. Of the 19 largest withdrawals, 10 were made during the first and last weeks of the month and 9 were made midmonth. The monthly totals of the unredacted withdrawals were as follows:

| Month | Unredacted Withdrawals |
|---|---|
| December 2016 | $508.00 |
| January 2017 | $623.25 |
| February 2017 | $1,958.00 |
| March 2017 | $1,252.25 |
| April 2017 | $899.25 |
| May 2017 | $483.25 |
| June 2017 | $123.25 |
| July 2017 | $1,304.00 |
| August 2017 | $160.00 |
| September 2017 | $1,360.00 |
| October 2017 | $1,240.00 |
| November 2017 | $1,540.00 |
| December 2017 | $600.00 |

The total of all withdrawals revealed in the unredacted portions of taxpayer's bank statements was $12,051.25. Additional ATM withdrawals in uncertain amounts can be distinguished among the redacted line items on April 17, May 1, June 30, July 5, July 17, August 28, and September 5.

Taxpayer testified that the withdrawals left unredacted on her bank statements were for child-care payments to her aunt. She testified that the reason her bank statements showed multiple smaller withdrawals throughout each month instead of single lump-sum withdrawals was that, in addition to cash, she paid her aunt by purchasing groceries and providing money as needed for the purchase of children's learning materials. Taxpayer testified that the monthly total of the cash, groceries, and learning materials always amounted to at least $1,000, regardless of any additional money her aunt received through the state's Employment-Related Day Care

/ / /

Program.  She testified that she made larger withdrawals at the beginning of each month with which to make the cash payments.

## II.  ANALYSIS

The issue is whether taxpayer made payments entitling her to the working family credit. It is undisputed that she was gainfully employed and that her aunt provided care for her children during the entire period at issue.

The working family credit is available to taxpayers with adjusted gross income less than 300 percent of the federal poverty level.  *See* ORS 315.264(4).[2]  Such taxpayers may claim a percentage of their employment-related expenses as a credit, including their expenses for care of dependent children under age 13.  ORS 315.264(1); IRC § 21.

Taxpayers are required to "maintain all records that are necessary to a determination of the correct tax liability."  OAR 150-314-0265(2)(a).[3]  For the working family credit, records of payments to a care provider must include "evidence that an expense was paid on a certain date to a specific individual or entity by [the taxpayer]."  *Shirley v. Dept. of Rev.*, TC–MD 130451D, WL 811543 at *3 (Or Tax M Div, Mar 3, 2014) (discussing predecessor to current working family credit).  Typically, that evidence is supplied by canceled checks, and the lack of canceled checks "is one of the most significant challenges facing a cash-basis taxpayer."  *Id*.  In the absence of canceled checks, adequate substantiation can be provided by "contemporaneous, signed receipts that include the date, the name of the individual who paid cash, and the amount paid."  *Stade v. Dept. of Rev.*, TC–MD 150369N, WL 282206 at *4 (Or Tax M Div, Jan 21, 2016).  In rare cases, bank statements may substantiate some portion of a claimed credit when

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

[3] Oregon Administrative Rules (OAR)

they are closely correlated with persuasive testimony and noncontemporaneous receipts. *See*, *e.g.*, *id.*

In the present case, no receipts were received into evidence, and taxpayer's heavily redacted bank statements did not correlate with her testimony and the other written evidence.

Taxpayer's testimony contradicted her prior written statement and her aunt's letter. In February, taxpayer wrote: "I pa[id] my care provider $1000 dollars cash at the beginning of every month." Her aunt provided the specific dates on which the cash payments were allegedly made. At trial, however, taxpayer testified that some significant portion of her payments were paid neither in cash nor at the beginning of the month.

Taxpayer's bank statements show over $12,000 in cash withdrawals from December 2016 to December 2017, but in only six months did the withdrawals amount to at least $1,000. For a period of three months—April, May, and June—the unredacted withdrawals totaled $899.25, $483.25, and $123.25, respectively. If taxpayer maintained a large cash reserve over that period, it is unclear why she made several smaller withdrawals during that time. If taxpayer did not maintain such a reserve, it is unclear how she paid her aunt.

Neither do the bank statements support her testimony that she made larger withdrawals at the beginning of the month with which to pay her aunt. Roughly half of the withdrawals of $300 or more occurred midmonth.

Given the inconsistencies between taxpayer's testimony and the written evidence, taxpayer has not borne her burden of proof. *See* ORS 305.427.

/ / /

/ / /

/ / /

### III.  CONCLUSION

The evidence before the court did not suffice to show that the department's assessment was wrong.  Now, therefore,

IT IS THE DECISION OF THIS COURT that taxpayer's appeal is denied.

Dated this ___ day of October, 2018.

_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on October 10, 2018.*